Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

```
In Re:                              )
                                    )  Bankruptcy Case
JOEL ROBERT KNOWLING,               )  No. 09-40551-rld7
_____ )
                                    )
PETER C. McKITTRICK, Trustee,       )
                                    )
                        Plaintiff,  )  Adv. Proceeding
                                    )  No. 10-03148-rld
          v.                        )
                                    )
MICHAEL BROWN, RON STEVENS,         )  MEMORANDUM OPINION
VISION PLASTICS, INC., TERRY GLENN  )
AND LYN GLENN,                      )
                                    )
                        Defendants. )
_____ )
```

On March 14, 2011, I heard argument at the hearing ("Hearing") on plaintiff Peter C. McKittrick, trustee's ("Trustee") and defendants Ron Stevens' ("Stevens") and Vision Plastics, Inc.'s ("Vision Plastics") cross-motions for summary judgment in this adversary proceeding. Stevens and Vision Plastics are referred to collectively herein as "Defendants."

Following the Hearing, I have considered carefully the pleadings, memoranda of arguments, stipulated facts and declarations

Page 1 - MEMORANDUM OPINION

submitted by the parties, in light of the arguments presented, and applicable legal authorities. Based on my consideration of the record before me, I conclude that the Trustee is entitled to summary judgment in his favor, and the cross-motion for summary judgment filed by Stevens and Vision Plastics will be denied. My reasons follow.

This Memorandum Opinion sets forth my conclusions of law under Federal Rule of Civil Procedure 52(a), applicable in this adversary proceeding under Federal Rule of Bankruptcy Procedure 7052.[1] The parties have stipulated that I have jurisdiction to decide this adversary proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(E), (K) and (O), United States District Court Local Rule 2100.1, and Rule 7001.

### Stipulated Facts

The following background facts are taken primarily from the Stipulated Concise Statement of Material Facts ("Stipulated Facts") filed by the parties. Factual statements set forth in declarations submitted independently by the Trustee or the Defendants are noted as such.

On December 18, 2009, Joel Robert Knowling ("Debtor") filed a bankruptcy petition for relief under chapter 7. The Trustee was appointed as the trustee in Debtor's bankruptcy case.

Vision Plastics is an Oregon corporation, and Stevens owns 100% of its outstanding stock.

Prior to the Petition Date, Debtor operated a business in

---

[1] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 2 - MEMORANDUM OPINION

Portland, Oregon under the assumed business name of Columbia River Lift Equipment ("Business"). The Business engaged in the purchase and sale of commercial lifts and other equipment (collectively, "Equipment").

Prior to the Petition Date, Debtor was a member of the Columbia River Yacht Club ("CRYC"). Stevens also was a member of CRYC. Debtor's wife at that time, Tracy Knowling ("Ms. Knowling"), was never a member of CRYC.

On or about June 1, 2009, the Debtor and Stevens entered into an agreement pursuant to which Stevens loaned the Debtor $225,000 (the "Loan"), and Debtor signed and delivered to Stevens a document entitled "Promissory Note – Personal Guaranty for repayment of business investment" ("Promissory Note"). Under the Promissory Note, the Debtor was to repay the Loan plus a return of an additional $16,500 on or before July 15, 2009. The Promissory Note was prepared by the Debtor, and neither the Debtor nor Stevens was represented by counsel with respect to the Promissory Note transaction. Declaration of Ronald E. Stevens ("Stevens Declaration"), Paragraph 2, at p. 2.

The Promissory Note listed the following as collateral for the Loan: (a) 2,835 square feet of water use rights, slip D-16, at CRYC ("Water Rights"); (b) four 2005 S-125 Genie Boom Lifts, serial numbers 716, 829, 837 and 912 (collectively, "Boom Lifts"); and (c) one 35' x 81' Christiansen Boathouse ("Boathouse") (collectively, the "Initial Collateral"). Stevens did not take any immediate steps to perfect his security interest in any items of the Initial Collateral. Stevens further never was listed as a security interest holder on the Boathouse title, and at the time the Promissory Note was signed, the Boathouse was

Page 3 - MEMORANDUM OPINION

owned by the Debtor and Ms. Knowling as joint tenants with rights of survivorship. Prior to making the Loan, the Debtor represented to Stevens that he owned the Boathouse, and it was titled in the Debtor's name only. Stevens Declaration, Paragraph 3, at p. 2.

The Debtor failed to repay the Loan on July 15, 2009 and thereafter was in default of his payment obligations to Stevens under the Promissory Note.

In September 2009, Stevens learned that, contrary to the Debtor's express representations to him, Ms. Knowling had an ownership interest in the Boathouse. "Debtor lied to me [Stevens], and I was not pleased by his prior fraudulent representation." Stevens Declaration, Paragraph 7, at p. 3.

On or about September 23, 2009, Stevens assigned his interest in the Promissory Note to Vision Plastics. On September 23, 2009, the Debtor and Vision Plastics agreed that Debtor would grant Vision Plastics a first position security interest in all Equipment and in all other assets of the Business ("Business Assets"), and Debtor would sign an assignment of lease ("Assignment of Lease") and a bill of sale ("Bill of Sale") with respect to the Water Rights to Vision Plastics "[b]ecause the Debtor was not able to grant a security interest in a boathouse described in the Promissory Note." Security Agreement, Recital B, at p. 1. Counsel for Vision Plastics prepared a Security Agreement ("Security Agreement") in September 2009 that was signed by the Debtor and Vision Plastics, respectively, on September 23, 2009, and September 25, 2009. The Security Agreement did not include any provision for a release of any of Defendants' claims, including fraud claims, against the Debtor.

Page 4 - MEMORANDUM OPINION

As part of and in conjunction with the signing of the Security Agreement by the parties, the Debtor signed the Assignment of Lease and the Bill of Sale. Under the Bill of Sale, the Debtor purported to transfer the Water Rights, now described as at slip location D-15, to Stevens. Vision Plastics, as a corporation, was not authorized to own the Water Rights under the CRYC rules.

The transfers contemplated and effected through the Security Agreement were intended by Vision Plastics to be a contemporaneous exchange for new value given to the Debtor.

After obtaining the Bill of Sale, Stevens requested the CRYC to approve the transfer of the Water Rights into his name, but the transfer of the Water Rights never was formally approved by the CRYC.

On October 8, 2009, Vision Plastics filed a UCC-1 financing statement with the Oregon Secretary of State reflecting a security interest in the Boom Lifts and other Equipment, the Business Assets and the Water Rights.

At the time of the transfers of interests in the Equipment, Business Assets and Water Rights to Vision Plastics, the Debtor owed Vison Plastics in excess of $241,000 and was in default of the Promissory Note obligations for having failed to make any payments to Vision Plastics and/or Stevens on the Loan.

On June 1, 2009, the Debtor was the sole owner of the Water Rights, as listed in the CRYC records. Ms. Knowling asserts an interest as co-owner of the Water Rights dating back to March 2009. Vision Plastics disputes that Ms. Knowling has any ownership interest in the Water Rights.

On February 25, 2010, the Trustee conducted an auction of the Equipment and Business Assets. Vision Plastics claims a secured interest in the auction proceeds. Gross proceeds from the sale of the Equipment and Business Assets were $94,657.

In May 2010, the Trustee sold the Boathouse and Water Rights free and clear of liens to a third party. Vision Plastics claims an interest in the Water Rights proceeds as a secured creditor or owner under the Bill of Sale. The Trustee and Vision Plastics have agreed that $77,500 of the Boathouse and Water Rights proceeds are allocable to the Water Rights.

For "preference" purposes under § 547, the date 90 days in advance of the Debtor's bankruptcy filing was September 19, 2009.

## Discussion

A. <u>Summary Judgment Standards</u>

Under Civil Rule 56(c), applicable under Rule 7056, summary judgment is appropriately entered only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is inappropriate when there are disputes over facts that may affect the outcome of the litigation under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). An issue of fact is genuine and material if the evidence is such that the fact finder could decide the case in favor of the nonmoving party. <u>Id.</u> All justifiable inferences from the evidence presented must be considered in favor of the nonmoving party. <u>Id.</u> at

Page 6 - MEMORANDUM OPINION

255.

The moving party initially bears the burden of showing that there are no genuine issues of material fact. Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party meets this burden, the opposing party must produce sufficient evidence beyond the pleadings, through affidavits and/or other admissible evidence, to demonstrate that material fact disputes in fact exist. Id.

B. Basic Preference Law

Section 547(b) authorizes the trustee to avoid certain transfers made to or for the benefit of creditors during the period shortly before a debtor's bankruptcy filing. O'Rourke v. Coral Constr. (In re E.R. Fegert, Inc.), 88 B.R. 258, 259 (9th Cir. BAP 1988); Valley Bank v. Vance (In re Vance), 721 F.2d 259, 260 (9th Cir. 1983). For preference purposes, the term "transfer" includes both "voluntary and involuntary" transfers of an interest in property of the debtor by "the creation of a lien" or "the retention of title as a security interest." See Western States Glass Corp. v. Harris (In re Bay Area Glass), ___ B.R. ___ (9th Cir. BAP June 28, 2011); § 101(54)(A) and (B). Congress intended that the term "transfer" be interpreted broadly to include, among other things, the grant of a consensual lien or security interest. See 2 Collier on Bankruptcy ¶ 101.54, at pp. 101-214-15 (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2011).

Section 547(b) provides in relevant part that:

> [T]he trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

Page 7 - MEMORANDUM OPINION

```
                    (3) made while the debtor was insolvent;
                    (4) made-on or within 90 days before the date of
                    filing of the [bankruptcy] petition;
                                . . .
                    (5) that enables such creditor to receive more than
                    such creditor would receive if-
                    (A) the case were a case under chapter 7 of this
                    title;
                    (B) the transfer had not been made; and
                    (C) such creditor received payment of such debt to the
                    extent provided by the provisions of this title.
```

There is no dispute among the parties that the subject transfers to Vision Plastics and Stevens were for the benefit of the Defendants as creditors, and the subject transfers were on account of an antecedent debt, the unpaid Loan. Accordingly, the first two elements for a preferential transfer under § 547(b) are satisfied.

Under § 547(f), Debtor is "presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the [Debtor's bankruptcy] petition." Defendants have submitted no evidence to rebut that presumption. Accordingly, the third preference element under § 547(b) is satisfied.

Although the parties raise some arguments as to whether September 23, 2009 (the date the Security Agreement, Assignment of Lease and Bill of Sale were executed by the Debtor) or October 8, 2009 (the date that Vision Plastics filed its UCC-1 financing statement with the Oregon Secretary of State) is the relevant date for preference analysis, both dates fall within the 90-day preference period in advance of the Debtor's bankruptcy filing. In these circumstances, whatever date applies to the transfers falls within the 90 day preference period of § 547(b)(4)(A), and the fourth preference element is satisfied.

Finally, although Defendants argue otherwise, the fact is if I

Page 8 - MEMORANDUM OPINION

do not avoid the subject transfers as preferential, Vision Plastics arguably will be entitled to all of the proceeds from the sale of the Equipment and Business Assets and the entire $77,500 of proceeds allocable to the Water Rights as having a first priority security interest in those proceeds, while if I find that the transfers are avoidable as preferences, Vision Plastics will only share pro rata with other general unsecured creditors in distributions from said proceeds. Accordingly, if the transfers are allowed to stand, Vision Plastics will receive more than it would have if the transfers had not been made. The fifth element under § 547(b) is satisfied.

Based on the record presented in this adversary proceeding, I find that the Trustee has met his burden of proof to establish that the transfers at issue are preferential for purposes of § 547(b).

C. <u>Contemporaneous Exchange for New Value</u>

Defendants' primary defense to the Trustee's motion for summary judgment and the basis for their own motion for summary judgment is their argument that the transfers provided for in the Security Agreement support a preference defense under § 547(c)(1). Section 547(c)(1) provides that:

> The trustee may not avoid under [§ 547] a transfer–
> (1) to the extent that such transfer was –
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange;
> . . . .

In the Stipulated Facts, the parties agree that the transfers in issue were intended by Vision Plastics to be a contemporaneous exchange for new

Page 9 - MEMORANDUM OPINION

value given to the Debtor. In an interrogatory response, the Debtor states that, "It is my understanding that [Vision Plastics] and/or Stevens agreed to accept a security interest in the [Equipment and Business Assets] in lieu of a security interest in the Boathouse, and it all happened simultaneously on or about September 23, 2009." He further states that, "In my terms 'in lieu of' means the same as 'in exchange for,'" a carefully crafted statement notable for its studied ambiguity. Defendant's Supplemental Limited Response By Stipulation To Plaintiff's First Set Of Interrogatories ("Defendant's Supplemental Response"), Response to Interrogatory No. 17, attached to the Declaration of Jeffrey C. Bodie. See Defendant's Supplemental Response, Response to Interrogatory No. 18. Accordingly, I conclude that the first element of the "new value" defense is satisfied.

The problem for Defendants is with the second element, whether in fact there was a substantially contemporaneous exchange of value. Under § 547(a)(2), "'new value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."

Defendants argue that the value exchanged on September 23, 2009, was Vision Plastics' release of its security interest in the Boathouse "then worth between $220,500 and $245,000," in exchange for security interests in the Equipment and Business Assets and the Bill of Sale to the Water Rights, that were collectively worth less than the

Page 10 - MEMORANDUM OPINION

value of the Boathouse.

I find that argument fundamentally problematic because it is inconsistent with express terms of the Security Agreement. Returning to the original Promissory Note transaction between the Debtor and Stevens, by its terms, the Promissory Note, as drafted by the Debtor, reflects an intent to grant a security interest in the Boathouse to Stevens. In his declaration, Stevens states that prior to his making the Loan and in response to a question from Stevens, Debtor represented that the Boathouse "was owned and titled in his name only." Stevens Declaration, Paragraph 3, at p. 2. Following the execution of the Promissory Note, Stevens never took any steps to perfect his security interest in the Boathouse by having his name noted on its title.

Thereafter, in September 2009, Stevens learned that in reality, Debtor was not the sole owner of the Boathouse, and in fact, Ms. Knowling had an ownership interest in the Boathouse. Stevens Declaration, Paragraph 7, at p. 3. As Stevens asserted, "Debtor lied to me, and I was not pleased by his prior fraudulent representation." Id.

With the Loan in default, the Debtor not having paid Stevens a dime on the outstanding Promissory Note obligation, Stevens took steps to protect his position. Taking no chances on the Debtor's further drafting efforts, Stevens retained attorney Mark Eves to prepare the Security Agreement, the Assignment of Lease and the Bill of Sale to document further transactions with the Debtor accurately and properly. After Stevens' assignment of the Promissory Note to Vision Plastics, Vision Plastics, Stevens and the Debtor signed the Security Agreement on or about September 23, 2009.

Page 11 - MEMORANDUM OPINION

After acknowledging the transactions reflected in the Promissory Note and Stevens' assignment of the Promissory Note to Vision Plastics, Recital B in the Security Agreement states the following:

> The above financial accommodations were provided by the Secured party in reliance upon representations made by the Debtor that the Debtor would execute and deliver to the Secured party this Security Agreement, together with other documents creating collateral and security for the above financial and other accommodations. <u>Because the Debtor was not able to grant a security interest in a boathouse described in the Promissory Note, the Debtor and Secured Party agreed to accept a first position security interest in the assets described below</u>. (Emphasis added.)

Paragraph 15 of the Security Agreement further provides, in relevant part: "This Agreement shall not be qualified or supplemented by course of dealing."

In other words, the Defendants and the Debtor expressly recognized in the Security Agreement that whatever intent as to the creation of security interests in favor of Stevens in the Initial Collateral was reflected in the Promissory Note, any security interest in the Boathouse was ineffective or illusory "[b]ecause the Debtor was not able to grant a security interest in" the Boathouse.[2]

---

[2] The security arrangements in the Promissory Note may not have been illusory only as to the Boathouse: In Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defendants' SJ Memorandum"), Defendants state that the Debtor never acquired the Boom Lifts. Defendants' SJ Memorandum, at p. 6.

As to the Water Rights, Debtor appears to have been "slippery" in his identification of the docking slip to which the Water Rights related. In the Promissory Note, the Water Rights are identified as "currently located @ slip D-16." Yet in the Security Agreement, the Bill of Sale and the UCC-1 financing statement filed by Vision Plastics with the Oregon Secretary of State, the Water Rights are identified as "at slip location D-15."

(continued...)

Page 12 - MEMORANDUM OPINION

Since Defendants acknowledged in the Security Agreement that no effective security interest in the Boathouse was provided in the Promissory Note, their argument that value can be provided for § 547(c)(1) purposes by the release of an unperfected security interest is unavailing. See, e.g., Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728 (9th Cir. 1994); Milchem, Inc. v. Fredman (In re Nucorp Energy, Inc.), 902 F.2d 729 (9th Cir. 1990).

Even if I credit the statement in the Stipulated Facts that the Defendants and Debtor agreed on September 23, 2009 that the grant to Vision Plastics of a first priority security interest in the Equipment and Business Assets and the transfer of the Water Rights in the Bill of Sale were made "in exchange for a release of Creditor's security interest in the Boathouse," such release of an unperfected security interest in the Boathouse does not meet the test for "value" established by the Ninth Circuit in Nucorp and Grand Chevrolet:

> In In re Nucorp Energy, 902 F.2d 729, 733 (9th Cir. 1990), we held that "a court must measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange." See also In re Spada, 903 F.2d 971, 977 (3d Cir. 1990) (holding that party seeking shelter of § 547(c)(1) must "prove the specific measure of the new value given to the debtor in the exchange"); In re Arrow Air, 940 F.2d 1463 (11th Cir. 1991). <u>Value should be measured at the time of the transfer</u>. In re Nucorp Energy, 902 F.2d at 733; In re Robinson Bros. Drilling, 877 F.2d at 33. (Emphasis added.)

In re Grand Chevrolet, Inc., 25 F.3d at 733.

---

²(...continued)
Apparently, whatever Stevens intended with respect to the Initial Collateral in the Promissory Note, as drafted, the Debtor gave him "the sleeves off his vest."

Page 13 - MEMORANDUM OPINION

The record presents clear evidence as to the value placed by the Defendants and the Debtor on the unperfected security interest in the Boathouse as of the date of the Security Agreement: Since Recital B states unequivocally a recognition by the parties that "the Debtor was not able to grant a security interest in" the Boathouse, I find that the ineffective attempt in the Promissory Note to grant a security interest in the Boathouse had no value at the time of the transfers on or about September 23, 2009.

Defendants assert two other sources of "new value" given to the Debtor at the time the subject transfers were made: 1) a brief extension of time to repay the Loan; and 2) avoidance of a fraud claim regarding the Debtor's misrepresentations to Stevens as to the status of title to the Boathouse prior to Stevens making the Loan. Defendants' SJ Memorandum, at pp. 7-8.

The Security Agreement does not mention any forbearance on collecting the Loan. A number of courts have held that the provision of § 547(a)(2) specifically excluding from the "new value" definition "an obligation substituted for an existing obligation," excludes a creditor's forbearance from taking collection action against the debtor from consideration as "new value" as a matter of law. See, e.g., American Bankof Marin County v. Leasing Serv. Corp. (In re Air Conditioning, Inc. Of Stuart), 845 F.2d 293, 298 (11th Cir. 1988), cert. denied, 488 U.S. 993 (1988); Alithochrome Corp. v. East Coast Finishing Sales Corp. (In re Alithochrome Corp.), 53 B.R. 906, 914 (Bankr. S.D.N.Y. 1985). In any event, there is no evidence in the record that would allow me to make a determination as to the value of "a brief extension of time to repay the

Loan" of unspecified duration.  See, e.g., Schlant v. Schueler (Inre Buffalo Auto Glass), 187 B.R. 451, 455 ((Bankr. W.D.N.Y. 1995) ("[E]ven though this Court believes that forbearance may provide new value, the actual value of said new value is for the Defendant, not the Trustee, to establish, and may be too speculative to be meaningful."). I find Defendants' assertion of new value from an indeterminate forbearance from taking collection action against the Debtor too speculative to be meaningful in this case.

As for Defendants' assertion that the subject transfers allowed the Debtor to avoid a fraud claim, as noted above, the Security Agreement does not include any provision for a release of claims, fraud or otherwise, by Defendants against the Debtor. Further, as pointed out by the Trustee in his Response to Defendants' Motion for Summary Judgment, following the Debtor's bankruptcy filing, the Defendants filed an adversary proceeding, No. 10-03080-rld, seeking to except their claims against the Debtor from discharge under § 523(a)(2)(A) based on the Debtor's alleged fraud and misrepresentations in inducing Stevens to make the Loan. In other words, whatever short-term reprieve the transfers provided for in the Security Agreement gave to the Debtor from fraud claims, they were not released and indeed, were prosecuted postpetition by the Defendants. I find that no new value was provided by the asserted "avoidance" of fraud claims.

Ultimately, I conclude that the transfers reflected in the Security Agreement, Assignment of Lease and Bill of Sale, and the subsequent filing by Vision Plastics of its UCC-1 financing statement with the Oregon Secretary of State were driven by the Defendants'

recognition that they were at risk with respect to the defaulted Loan obligation, an antecedent debt, and they needed to take steps to shore up their security position for purposes of collection. The original attempt to establish a secured position with respect to the Boathouse was recognized as ineffective by the Defendants in the Security Agreement, drafted to protect them by Defendants' own counsel. I previously have concluded that the Trustee has met his burden of proof to establish that the subject transfers were avoidable preferences under all of the required elements of § 547(b). I further conclude that Defendants have not met their burden to establish a contemporaneous exchange defense under § 547(c)(1). They have not presented a genuine issue of material fact that would preclude entry of summary judgment in favor of the Trustee.

### Conclusion

Based on the foregoing conclusions of law, in light of the record presented by the parties, I conclude that the Trustee's motion for summary judgment should be granted, and the Defendants' cross-motion for summary judgment should be denied. Counsel for the Trustee should submit an appropriate form of order and judgment, consistent with this Memorandum Opinion, within ten days following its entry.

###

cc: Christopher L. Parnell
Gregory J. Dennis
Jeffrey C. Bodie
Craig G. Russillo
Heather E. Harriman